**Dated: October 27, 2023**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Derek Ryan Mask | ) | Case No. 23-10833-JDL |
| | ) | Ch. 11 |
| Debtors. | ) | |

### ORDER DENYING DEBTOR'S MOTION TO ESTIMATE CLAIM

### I. Introduction

In 2022 Creditor, Valliance Bank (the "Bank") obtained a state court jury verdict against Debtor Derek Mask ("Mask") in the amount of $684,388.25 for breach of contract, plus attorney's fees to be determined, as memorialized in a Journal Entry of Judgment entered on October 3, 2022. The Bank filed its Proof of Claim in the amount of $684,388.25 [POC 14-1].[1] Relying upon 11 U.S.C. § 502(c)(1),[2] Mask has objected to the

---

[1] By Addendum to its Proof of Claim, the Bank estimates its attorney's fees, which have not yet been determined by the state court, to be $800,000, making its total claim of $1,484,388.25.

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Bank's Proof of Claim in its entirety and requests that the Court estimate the total aggregate value of the Bank's Claim at $0.00 or, in the alternative, if the Court determines the Bank is entitled to a claim, that the Court estimate the same to a maximum of $340,918.[3]  Before the Court for consideration are:

       1. *Motion to Estimate Maximum Amount of Proof of Claim No. 14 Under Bankruptcy Code Sections 105(a) and 502(c)* [Doc. 92];

       2. *Valliance Bank's Response to Motion to Estimate Maximum Amount of Proof of Claim No. 14 Under Bankruptcy Code Sections 105(a) and 502(c)* [Doc. 96];

       3. *Debtor's Reply in Support of His Motion to Estimate Maximum Amount of Proof of Claim No. 14 Under Bankruptcy Code Sections 105(a) and 502* [Doc. 99]; and

       4. *Valliance Bank's Sur-Reply in Response to Motion to Estimate Maximum Amount of Proof of Claim No. 14 Under Bankruptcy Code Sections 105(a) and 502(c)* [Doc.104].

The Court holds that Mask is not entitled to have the Court "estimate" the Bank's claim on at least three grounds: (1) the claim represented by the state court judgment is not a "*contingent or unliquidated claim*" which is required by § 502(c) to estimate a claim; (2) the *Rooker-Feldman Doctrine* precludes this Court from acting as an appellate court to overturn the state court judgment, and (3) the equitable powers conferred on the Court by § 105(a) do not permit the court to take action that other Code provisions, here the requirements of § 502(c)(1), prohibit.  Pursuant to Rules 7052 and 9014 of the Federal

---

[3] This amount is the principal amount of the state court Judgment, exclusive of prejudgment interest of $302,559.85 awarded by the court and costs and attorney's fees to be determined.

Mask acknowledges that a challenge to a creditor's claim is normally done by objecting to the claim pursuant to § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure.  Mask requests the Court treat the relief sought in the motion before it "as a formal objection to such claim and requests that the Court treat the relief sought ... as acting in lieu thereof."[Doc. 92, pg. 2 n.1].

2

Rules of Bankruptcy Procedure,[4] the below Findings of Fact and Conclusions of Law support the Court's decision.

## II. Facts[5]

On July 1, 2013, Mask executed a Promissory Note in favor of the Bank in the amount of $527,645.[6] The purpose of the loan was for Mask to invest in Foundation Health Care, a private company in Oklahoma City which was merging with Graymark Healthcare, Inc.. Roy Oliver ("Oliver"), who was the largest owner of Graymark and had personally guaranteed $9 million of Graymark's debt to Arvest Bank, was also the owner and Chairman of the Board of the Bank.

Mask did not pay the Promissory Note owed to the Bank, and in September 2017 the Bank filed suit in state court against Mask to collect the unpaid balance of the note.[7] In his defense and by a counterclaim against the Bank and third-party claims against Oliver and Stanton Nelson ("Nelson"), Mask asserted that the Bank, acting through Oliver and Nelson, had engaged in a fraudulent scheme to induce Mask and others to invest in

---

[4] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[5] The facts as set forth herein is only a brief summary of the state court litigation. In their pleadings, both the Bank and Mask go into some factual detail as to Mask's allegations in the state court litigation that the Bank and others had committed a violation of the Oklahoma Securities Law which Mask claimed should have rendered his debt to the Bank unenforceable and entitle him to damages. This Court need not go into the detail of those allegations for the reasons as explained in this opinion that those issues had been settled by the jury verdict and judgment in the state court case which this Court does not have the power to review.

[6] This figure is taken from the "Facts" as set forth in the Bank's response. In his motion, Mask asserts that the principal amount of the promissory note was $427,645.

[7] *Valliance Bank v. Mask* et al, Case No. CJ-2017-1188, District Court of Cleveland County, Oklahoma.

Foundation Health Care for the purpose of releasing themselves of debts of Graymark which they had guaranteed.

After a multi-week jury trial, on June 8, 2022, the jury returned a verdict in favor of the Bank in the amount of $340,918, the court later awarded the Bank pre-judgment interest in the amount of $302,559.95, and post-petition interest accruing day-to-day in the amount of $170.46, for a total judgment of $684,388.25.  The jury held in favor of the Bank and against Mask on his counterclaim against the Bank on the basis of fraud and violations of the Oklahoma Securities Act.  On Mask's Third-Party Claims, the jury found that both Nelson and Oliver had violated the Oklahoma Securities Act and had engaged in reckless behavior and awarded Mask both actual and punitive damages. [Journal Entry of Judgment, Doc. 92-1].

On February 27, 2023, the state trial court entered an order staying collection efforts by the Bank for twenty (20) days pending Mask securing an appeal bond in the amount of $1 million for his appeal to the Oklahoma Supreme Court.  Mask did not obtain such an appeal bond; rather on April 3, 2023, he filed his Petition for Relief under Chapter 11 of the Bankruptcy Code staying any of the Bank's collection efforts.

Based on the state court judgment, the Bank filed its Proof of Claim in the amount of $684,388.25. [POC 14-1].  Mask filed his motion to estimate claim under § 502(c)(1) seeking the Court to estimate the Bank's claim at either $0.00 or, in the alternative, a maximum of $340,918 (the principal amount of the judgment without interest or attorney's fees).  Mask's Motion is "based on the legal prohibitions under the Oklahoma Securities Act, 71 Okla. Stat. § 1-509, and Oklahoma common law, which prevents Valliance Bank from profiting on the very Promissory Note used to procure adjudicated fraud and

Securities Act violations upon Mask." [Doc. 92, ¶ 17].

### III. Discussion

**A. The Bank's Claim Is Liquidated and Not Subject to Estimation under § 502(c)**

Section 502(c)(1) provides, in part, that "[t]here shall be estimated for purpose of allowance under this section ... any *contingent or unliquidated* claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case...." 11 U.S.C. § 502(c)(1) (Emphasis added). Resort to § 502(c) is only appropriate, however, when the claim is either contingent or unliquidated. *In re Rhead*, 179 B.R. 169, 172 (Bankr. D. Ariz.1995); *In re Casey*, 198 B.R. 910, 916 (Bankr. S. D. Cal.1996); *Matter of Continental Airlines*, 981 F.2d 1450, 1461 (5th Cir. 1993).

"[T]he accepted definition of a 'liquidated debt' is one that is readily ascertainable as to value." *Miller v. D & M Holdings US Inc. (In re Digital Networks North America, Inc.)*, 2018 WL 3869599, at *6 (Bankr. D. Del. 2018) (quoting *In re Dow Corning Corp.*, 215 B.R. 346, 359 (Bankr. E.D. Mich. 1997)); *In re A & B Associates, L.P.,* 2019 WL 1470892, at *34 (Bankr. S.D. Ga. 2019); *See also In re Robinson,* 2012 WL 5457336, at *2 (Bankr. D. Mass. 2012) ("A debt is liquidated if it is subject to 'ready determination and precision in computation of the amount due.'"). An unliquidated debt, on the other hand, is not susceptible to ready determination. *In re Aparicio,* 589 B.R. 667, 676 (Bankr. E.D. Cal. 2018) ("[D]isputes as to the debtor's liability for a debt does not render a debt unliquidated unless the dispute precludes the ready determination of the debt."). In the present case, the Bank's claim is readily determinable from the state court judgment.

Estimation contemplates that the bankruptcy court will, in effect, put itself in the


place of a non-bankruptcy court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the amount of the debt.  Here, judgment was reached by the state court after a multi-week jury trial. Section 502(c) presupposes that a non-bankruptcy court has not already done so.  It would stand comity on its head and misuse the limited scope of § 502(c) for a bankruptcy court to proceed as if a non-bankruptcy court or jury had not acted at all when a case has already proceeded to judgment.  Yet that is what Mask asks this Court to do.  Because the Bank's claim proceeded to judgment in state court, the claim is neither contingent nor unliquidated and thus not subject to estimation under § 502(c).[8]

Another question regarding the liquidated status of the claim is whether a debtor, by scheduling the claim as disputed, or by filing a claim objection, can make an otherwise liquidated claim unliquidated for purposes of § 502(c).  The courts which have considered the question have concluded that a readily calculable claim remains liquidated regardless of whether it is disputed. "[A] claim is liquidated when the amount can be readily determined with precision and capable of ascertainment by reference to an agreement or simple mathematical computation." *In re Elrod,* 178 B.R. 5, 6 (Bankr. N.D. Okla. 1995); *In re Lamar,* 111 B.R. 327, 329 (D. Nev. 1990); *In re Nicholes*, 184 B.R. 82, 91 (9th Cir. BAP 1995) ("So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated..., regardless of any dispute."). Furthermore, the fact that a state court judgment is on appeal as of the date of the filing of bankruptcy does not make the claim contingent even though it may be disputed. *In re*

---

[8] Hypothetically, even if § 502(c) were applicable to this case and the Court was obliged to estimate the claim, the Court would estimate it in the amount of the state court judgment.

*Mitchell*, 255 B.R. 345, 360 (Bankr. D. Mass. 2000). That Mask disputes or objects to the claim does not make it unliquidated.

**B. *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine arises from the "unremarkable" observation that Congress has not given district courts general appellate jurisdiction over state court judgments. *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc). Briefly stated, the *Rooker-Feldman* doctrine bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517 (2005) (*Rooker-Feldman* precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court.).

Courts employ a four-part test for determining whether a claim is subject to dismissal under the *Rooker-Feldman* doctrine: (1) the plaintiff lost in state court, (2) the state-court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the federal claim was filed, and (4) the plaintiff is asking the district court to review and reject the state judgment. *Id.*; *Market v. City of Garden City, Kansas*, 723 Fed.Appx. 571, 572-73 (10th Cir. 2017); *E.B. v. Verniero,* 119 F.3d 1077, 1091-92 (3rd Cir. 1997) ("If a litigant resorts to a state court and suffers an adverse judgment, a lower federal court must respect that judgment unless and until it is overturned. The litigant's only remedy is by way of appeal through the state court system and by way of petition to the Supreme

Court of the United States thereafter."), *reh'g denied*, 127 F.3d 298 (3rd Cir. 1997); *In re Roberts*, 505 B.R. 555, 569 (Bankr. N.D. Okla. 2014) (*Rooker-Feldman* bars claims that directly seek to set aside a state court judgment); *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) ("In other words, an element of the claim must be that the state court wrongfully entered its judgment."); *Williams v. HSBC Bank USA, N.A.*, 681 Fed. Appx. 693 (10th Cir. 2017) (*Rooker-Feldman* barred mortgagor's claim for return of their home in federal suit alleging that the home was wrongfully foreclosed upon in state court).

*Rooker-Feldman* applies to a bankruptcy court's review of a state court judgment. As stated in *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3rd Cir. 1997):

> [t]he bankruptcy court is also prohibited from reviewing the state court's judgment by the *Rooker-Feldman doctrine*, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments. *See, e.g.*, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311-12, 75 L.Ed.2d 206 (1983) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)); *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1496 (5th Cir. 1993) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]") (quoting *In re G & R Mfg. Co.*, 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)).

*See also, In re Randall*, 358 B.R. 145, 153 (Bankr. E.D. Pa. 2006).

In the Court's opinion, there is no doubt that Mask's motion to estimate is a clear frontal assault upon the state court judgment and seeks to make this Court an appellate court. Mask's motion states, "[a]s a victim of fraud and securities act violations (even receiving punitive damages) via the Promissory Note with Valliance Bank, Section 1-509 (K) of the Securities Act mandates that the Judgment against Mask in favor of Valliance

8

Bank cannot stand as a matter of law." [Doc. 92, ¶ 26].  The motion continues that "... Valliance Bank cannot, as a matter of law under section 1-509 (K) 'prevail' on a breach of contract claim for the very investment by which Mask was defrauded by Valliance Bank's own officers and who had undisputed participation, involvement, and approval of the subject investment and loan to Mask." [Doc. 92, ¶ 28].  His motion further alleges that "despite the fraud committed by Nelson and Oliver on Derek Mask with respect to his investment in Graymark via financial instruments of Valliance Bank, the Jury determined that Valliance Bank was owed $340,918 under the subject Promissory Note.... Thereafter, the trial court improperly awarded the bank $302,559.85 in prejudgment interest." [Doc. 92, ¶ 14].

The Petition in Error filed by Mask in the Oklahoma Supreme Court appeal from the state court judgment asserts the issues, in part, are:

> 2. Whether the trial court wrongly denied Mask's Motion to Vacate the Judgment In favor of Valliance Bank against Derek Mask because the underlying Note is void, illegal, and unenforceable under Oklahoma contract law and the Oklahoma Securities Act as Mask was defrauded into the Investment at issue as determined by the Jury.
>
> * * * *
>
> 7. Whether the trial court erred in granting Plaintiff Bank's Motion to Settle Journal Entry and thereby awarding the Bank "pre-judgment interest" in the amount of $302,559.85 as of August 19, 2022 and accruing thereafter.[9]

---

[9] *"Valliance Bank, Plaintiff/Appellee v. Derek Mask, Defendant/Third-Party Plaintiff/Appellant and Roy Oliver and Stanton Nelson, Third-Party Defendants/Appellees,* Oklahoma Supreme Court, Case No. 120940; Petition in Error filed December 20, 2022, Exhibit C: Issues to be Raised on Appeal.

It is clear that Mask has premised his motion on his allegation that the jury and the judge just got it wrong.

In *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19 (9th Cir. BAP 1997), (abrogated on other grounds, *In re Harbin*, 486 F.3d 510 (9th Cir. 2007),[10] the United States Bankruptcy Appellate Panel of the Ninth Circuit addressed a case similar to one before this Court. There, creditors had filed proofs of claim against a debtor company based upon a $11.5 million state court judgment. The debtors, the company and its wholly-owned subsidiary, moved to have the claims disallowed, on the grounds that the state court did not have subject matter jurisdiction, or alternatively, to have the claims estimated at $0. With respect to the company, the bankruptcy court found that, inter alia, the *Rooker-*

---

[10] *Harbin* followed the 9th Cir. BAP in *In re Lopez,* 367 B.R. 99, 104 n.2 (9th Cir. BAP 2007) in abrogating the holdings in *Audre* and *Keenan* (discussed below) because those cases had improperly conflated preclusion principles in determining the scope of *Rooker-Feldman.* The Supreme Court in *Exxon Mobil*, 544 U.S. 280, 125 S.Ct. 1517 (2005) and *Lance v. Dennis*, 546 U.S. 459, 126 S.Ct. 1198 (2006) had narrowed the scope of *Rooker-Feldman* by rejecting the use of preclusion principles in determining the scope of *Rooker-Feldman,* noting that "*Rooker-Feldman* is not simply preclusion by another name" and that "incorporation of preclusion principles into *Rooker-Feldman* risk turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state court judgments, contrary to the Full Faith and Credit Act." *Lance*, 546 U.S. at 466. Here, the Court is not employing the law of preclusion (res judicata or collateral estoppel). The Court believes that the rationale and language, if not the holdings, of *Audre* and *Keenan* apply to the estimation of Mask's claim.

In a matter applicable to the present case, the Court notes that unlike preclusion principles, *Rooker-Feldman* does not distinguish between "temporary" and "final" orders. *Rooker-Feldman* extends to all state court decisions-final or otherwise-even where the state-court judgment at issue is subject to modification on appeal by a superior state court. *See, e.g.*, *Facio v. Jones*, 929 F.2d 541 (10th Cir. 1991) (applying *Rooker-Feldman* to the decision of an intermediate state-court judgment); *Anderson v. Colorado*, 793 F.2d 262 (10th Cir. 1986) (same). Thus, in the Tenth Circuit, *Rooker-Feldman* applies to all state-court judgments, including those of intermediate state courts. Accord *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 n. 3 (9th Cir. 1986) ("[T]he *Feldman* doctrine should apply to state judgments even though state court appeals are not final.").

10

*Feldman* doctrine precluded collateral attack on the State Court Judgment. The appellate panel affirmed that finding. The court noted that "[t]he *Rooker-Feldman* doctrine ... provides that a federal district court lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final determinations of state court decisions." *Audre*, 216 B.R. at 26. It found that:

> [i]f a federal bankruptcy court were to intervene in a state court judgment, it could only do so if the state proceedings were void *ab initio*; a void judgment being one which from its inception was a complete nullity and without legal effect. *In re James*, 940 F.2d 46, 52 (3rd Cir. 1991). The *James* court correctly noted that in the interest of finality, the concept of void judgments is to be narrowly construed. *Id*. In fact, the *Rooker-Feldman* doctrine applies even where a state court judgment may be in error.
>
> In the instant case, the [state] court judgment was not a complete nullity and without legal effect. Until it is reversed by the California court of appeals, for the purposes of the *Rooker-Feldman* doctrine, it is a valid final judgment.
>
> Based on the foregoing reasons, we conclude that the *Rooker-Feldman* doctrine precludes the bankruptcy court from disallowing [the creditors'] claims against [the company] based on the [state court] judgment.

*Id.* at 29–30 (citation omitted).

Similarly, in *In re Keenan*, 201 B.R. 263 (Bankr. S.D. Cal. 1996), a Chapter 11 debtor had requested estimation of a creditor's claim arising from a pre-petition state court judgment. Before filing his petition, the debtor had filed an appeal of the judgment. In arguing in favor of estimation, the debtor asserted that the determination of the creditor's claim through the state court appellate process would "unnecessarily delay reorganization." *Id*. The *Keenan* Court held, however, that:

11

> [D]ebtor asserts he is not attacking the state court judgment, and that its validity will be determined on appeal in the state courts. Yet he wants the state court judgment to be ignored, and for this Court to estimate under state law what a state court or jury would find the claim was worth.... In this Court's view, debtor's argument is disingenuous. Debtor really is seeking to have a second try at his defense of the state case. He wants this Court to substitute its judgment for the judgment already reached by a state court jury and judge. The *Rooker-Feldman* doctrine precludes such a result.

*Id.* at 267.

Mask states that he "is <u>NOT</u> asking this court to overturn or vacate the judgment... but the bankruptcy court cannot allow or enforce the Bank's Proof of Claim... because the judgment is unenforceable as a matter of applicable Oklahoma law." (Emphasis original.) [Doc. 99, pg. 2].[11] Mask's argument is disingenuous. He *is* asking this Court to ignore and rule contrary to the state court judgment. The jury and the state court found otherwise, and rejected Mask's assertion that the alleged fraud barred the Bank from recovery on it's Promissory Note. Under these circumstances, entertainment of Mask's claims to alter the state court judgment by way of either estimation or objection to the Bank's claim would constitute the equivalent of an appellate review of the state court judgment. Indeed, in order to address Mask's claims, this Court would first have to determine that the state court erroneously entered the judgment.

As the state court judgment is a valid and final judgment for *Rooker-Feldman* doctrine purposes despite being on appeal, a § 502(c) estimation of the claim would be

---

[11] This is the exact claim that Mask argued in asking the state court to vacate its judgment: "[T]he Court must vacate Valliance Bank's judgment as a matter of law. The Bank's judgment is on a Note procured from Mask via fraud...and must be vacated to be consistent with and in compliance with the Oklahoma Securities Act and Oklahoma contract law and public policy." [Doc. 92-2].

improper. By enactment of § 502(c) Congress did not intend to authorize bankruptcy courts to, *de facto*, conduct appellate review of a state court judgment, review of which would otherwise violate 28 U.S.C. § 1257 and the *Rooker-Feldman* doctrine. Mask's claim for estimation runs afoul of that principle.

**C. The Court's Powers Under § 105(a)**

Bankruptcy Code § 105(a) vests the Court with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Mask cites § 105(a) to give this Court "wide latitude in effectuating the provisions of section 502...." [Doc. 99, pg.5]. In reality, what Mask is really seeking is to have the Court use § 105(a) *not to effectuate but invalidate* § 502(c)(1) which allows estimation only where a claim is "contingent or unliquidated." As discussed above, here the Bank's claim is liquidated.

In *Law v. Siegel*, 571 U.S. 415, 421, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) the Supreme Court held that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" The Supreme Court further stated that:

> [s]ection 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.

*Id*. at 421. As the Tenth Circuit noted in *In re Scrivner,* 535 F.3d 1258, 1263 (10th Cir. 2008):

> We have repeatedly emphasized, however, that a bankruptcy

13

court may not exercise its "broad equitable powers" under § 105(a) "'in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code.'" *In re Frieouf*, 938 F.2d 1099, 1103 n. 4 (10th Cir. 1991) (quoting *In re Western Real Estate Fund, Inc.*, 922 F.2d at 601). In other words, a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute. See, e.g., *In re Alderete*, 412 F.3d at 1207 (holding that the bankruptcy court lacked the power under § 105(a) to grant the partial discharge of student loan debt when the debtor did not show undue hardship as required by statute); *In re Tuttle*, 291 F.3d 1238, 1245 (10th Cir. 2002) (noting that even though the debtor's "equitable arguments [under § 105(a)] are compelling, they cannot overcome the plain language of the Code"). As we have previously noted, "[t]o allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of [a statute] mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *In re Alderete*, 412 F.3d at 1207 (quotation omitted).

Simply stated, § 105(a) does not afford Mask the ability to evade the "contingent or unliquidated" requirement of § 502(c)(1). Accordingly, for the reasons stated above,

**IT IS ORDERED** that Debtor Derek Mask's *Motion to Estimate Maximum Amount of Proof of Claim No. 14 Under Bankruptcy Code Sections 105(a) and 502(c)* [Doc. 92] is **Denied.**[12]

# # #

---

[12] Mask also sought to have his motion to estimate claim constitute an objection to the Bank's Proof of Claim under § 502 and Bankruptcy Rule 3007. See footnote 3 above. To the extent Mask's motion to estimate is also to be treated as an objection, the objection is **Denied**.